# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRON E. BROWN, | ) 1:11-cv-01864 GSA |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Myron E. Brown ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary A. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. (*See* Docs. 9 & 10.)

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

In August 2006, Plaintiff filed an application for benefits, alleging disability beginning October 23, 2003. *See* AR 130-132. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 71-82. ALJ Sharon L. Madsen held a hearing and issued an order denying benefits on August 14, 2009, finding Plaintiff was not disabled. AR 13-21. Thereafter, on September 9, 2011, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Madsen held a hearing in Fresno, California, on May 28, 2009. Plaintiff appeared via videoconference from Bakersfield and was assisted by attorney Rosemary Abarca. Vocational Expert ("VE") Kenneth Ferra also testified. AR 23-52.

Plaintiff lives in Bakersfield at a sober living home. AR 27-28. He was born June 30, 1961. He is five feet eight and a half inches tall and weighs 233 pounds. AR 28. While Plaintiff does have a driver's license, he does not drive because he does not have a car. AR 28. Typically, he uses the bus to get around, or he will get a ride. AR 29, 46. While Plaintiff attended twelfth grade, he did not graduate from high school. AR 29.

When asked about taking care of his own personal needs, Plaintiff indicated he does not have any difficulty showering, shaving or dressing. He makes his own bed and keeps his room clean. AR 29. He can prepare a sandwich or use the microwave, and can shop for necessary items. AR 30, 45. Once a week, Plaintiff attends church; he also attends an AA meeting every Friday evening. AR 30, 46. A typical day is spent watching television and resting. He also goes outside to water the grass. AR 30. For the previous year, Plaintiff has been the volunteer breakfast cook. This means he cooks the breakfast meal for the residents of the sober living home. It takes him about an hour and a half and he works with a helper. AR 41. He used to cook up to three meals a day about two years ago, but his health problems have affected his ability to cook. More particularly, lifting and standing make it difficult. AR 42.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    In 1999, Plaintiff worked for the Kern County Transit Company as a cab driver. In the
2 mid-1990s Plaintiff worked as a meat cutter in a small grocery store. AR 31. He has also
3 worked at Domino's Pizza, taking orders and delivering pizzas on a part-time basis. AR 31.
4    With regard to back pain, Plaintiff indicated the pain is in his lower back and it comes
5 and goes. AR 32. He takes Neurontin to treat his back pain. AR 33; *but see* AR 38 (neurontin
6 treats tingling and numbness). He also has some neck pain and indicated "[i]t was ruled out to a
7 pinched nerve." AR 33. Plaintiff indicated it is difficult to lift things because of the pinched
8 nerve in his lower back and neck. He estimated he could lift two to three pounds. AR 35; *but*
9 *see* AR 38 (can only lift that much weight due to numbness in his hand). He tends to drop things.
10 AR 38-39.
11   Plaintiff has been treated at the emergency room for swelling in his legs on two
12 occasions. The doctors told him it was normal but he believes it's getting better as he loses
13 weight. AR 40. While both legs swell, it is worse in the right leg. AR 39-40. The swelling has
14 been an issue for the last two months. AR 40. Plaintiff has elevated his legs everyday since
15 leaving the hospital. AR 44-45. He elevates his legs at about 3 or 4 o'clock in the afternoon for
16 about an hour or an hour and a half, and then does so again at about 8 o'clock in the evening.
17 AR 45. If he does not elevate his legs, the pain increases and numbness occurs. AR 45.
18   Plaintiff takes insulin to treat his diabetes and has done so for five years. AR 37; *but see*
19 AR 33. He takes both Lantus and Humalog and he keeps his sugar levels under control. AR 33,
20 38-39. He also follows a diabetic diet and has lost forty pounds in the last six months. AR 39.
21 With regard to neuropathy, Plaintiff gets numbness and tingling from his neck down to his legs
22 and feet. AR 33-34. The medication he takes for neuropathy helps, but it does make him a little
23 dizzy. AR 34, 38.
24   High blood pressure and gastric problems are controlled with the prescription
25 medications Metoprolol and Nexium. AR 34-35. He sometimes gets chest pain. AR 47-48.
26 Plaintiff was prescribed Tramadol to treat his pain, however, he stopped taking the medication
27 after two days because it caused itching and blurry vision. AR 47.
28

3

Plaintiff "[s]ometimes" has difficulty sitting and estimated he could do so for about twenty minutes or so before needing to move. AR 36. Further, Plaintiff estimated he could walk about a mile and a half. AR 36. He does so twice a week on the advice of his physicians. AR 42. He has to stop and rest and it will occasionally take him two hours to walk a mile and a half. AR 43. After walking about a half hour, he stops and rests for about twenty to thirty minutes. AR 43. Sometimes he gets short of breath. AR 43.

To treat his depression, Plaintiff takes the prescription medication Lexapro. He does not receive counseling because the medication controls his depression. AR 36, 43-44. Finally, Plaintiff has difficulty focusing and concentrating, and can do so for about twenty minutes before needing a ten minute break. AR 44.

VE Ferra described Plaintiff's past work as: delivery, light and unskilled; and taxi driver, medium and semi-skilled, with an SVP[3] of three; and meat cutter, heavy and skilled, with an SVP of six. AR 49.

In a hypothetical question posed by the ALJ, the VE was asked to assume a hypothetical person of the same age, education, language and work experience, who had the residual functional capacity ("RFC") to lift and carry, fifty pounds occasionally and twenty-five pounds frequently, who could sit, stand or walk for six hours, with a limitation to simple, routine tasks with an SVP of one or two. AR 49. VE Ferra indicated such an individual could not perform Plaintiff's past work as a taxi driver or meat cutter, but could perform the delivery work. AR 49-50. In the alternative, the individual could also perform the work of a: cleaner, DOT[4] 381.687-018, with approximately 116,000 positions available in California; farm worker, DOT 403.687-010, with approximately 61,000 positions available in California; and hand packager, DOT 920.587-018, with approximately 16,000 positions available in California. Multiplying those figures about ten will provide a national figure. AR 50.

---

[3] "SVP" refers to the Specific Vocational Preparation.

[4] "DOT" refers to the Dictionary of Occupational Titles.

4

In a second hypothetical question, VE Ferra was asked to assume the same limitations present in the first hypothetical, with an additional limitation to occasional gripping and grasping of a forceful nature. AR 50. The VE indicated that such an individual could still perform the work identified in the previous hypothetical. AR 50.

In a third hypothetical question, the VE was asked to consider a hypothetical person of the same age, education, language and work experience, who had the RFC to lift and carry, twenty-five pounds occasionally and ten pounds frequently, who could sit, stand or walk for six hours, with a limitation to simple, routine tasks. AR 50. VE Ferra indicated the individual could perform Plaintiff's past work in delivery. AR 50. Additionally, such an individual could perform the work of a cashier II, DOT 211.462-010, with approximately 113,000 positions available in California; a cleaner, DOT 323.687-014, with approximately 56,000 positions available in California; and a sorter, DOT 529.687-186, with approximately 3,800 positions available in California. Again, national figures are obtained by multiplying those numbers by ten. AR 51.

Finally, in a fourth hypothetical question, the VE was asked to consider a hypothetical person of the same age, education, language and work experience, who had the RFC to lift and carry twenty-five pounds occasionally and ten pounds frequently, who could sit, stand or walk for six hours, occasionally perform gross and fine handling, with a limitation to simple, routine tasks and an ability to concentrate for no more than thirty minutes at a time. AR 51. VE Ferra indicated no work would be available for such an individual. AR 51.

**Medical Record**

The entire medical record was reviewed by the Court. AR 184-513. The medical evidence will be referenced below if necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-21.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 23, 2006. AR 15. Further, the ALJ identified diabetes mellitus with

neuropathy, lumbar strain, obesity, and depression as severe impairments. AR 15. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 15-17.

Based on her review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently, and to stand or walk for six hours and to sit for six hours in an eight-hour workday with occasional forceful gripping and grasping, and the ability to perform simple routine tasks. AR 17-20.

Next, the ALJ determined that Plaintiff was unable to perform his past relevant work as a taxi cab driver or meat cutter. AR 20. However, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as industrial cleaner, farm worker and hand packager. AR 20-21. Therefore, the ALJ found Plaintiff was not disabled. AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

### *The ALJ's Credibility Findings*

Plaintiff contends the ALJ erred in assessing his testimony. (Doc. 12 at 8-14; *see also* Doc. 14 at 3-4.) In response, the Commissioner asserts the ALJ provided valid reasons for discrediting Plaintiff's subjective complaints. (Doc. 13 at 7-10.)

#### 1. *The Legal Standards*

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

## 2.  *Analysis*

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Madsen found that Plaintiff suffered from the severe impairments of diabetes mellitus with neuropathy, lumbar strain, obesity, and depression. AR 15. Additionally, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 19. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of those symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ

to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

In this case, ALJ Madsen found, in pertinent part, as follows:

> The claimant testified as to his work history, medical condition, and current activities of daily living. He last worked as a taxi cab driver. He also worked at [a] pizza parlor taking orders and delivering pizza and worked at a grocery store as a meat cutter. The claimant testified that he is 5'8" tall and weighs 233 pounds, is right handed, and lives in a sober living home. He gets food stamps. He has a driver's license but does not have a car and gets around by bus, walking or a ride from a friend. The claimant testified that he has low back pain, a pinched nerve in his neck, diabetes, high blood pressure, gastric problems, and depression. He stated he is on oral medication and insulin for diabetes which is keeping his blood sugar levels under control, but he has numbness and tingling in his feet for which he takes Neurontin. His lower back pain comes and goes and he takes medication for his back and neck pain. He also takes high blood pressure medication and Nexium for his gastric problems. He follows a diabetic diet and has lost 40 pounds. The claimant does not receive any mental health counseling for his depression and takes Lexapro. When depressed he wants to be alone. He testified that he abused drugs and alcohol, but has been clean and sober for 9 years. He has been hospitalized twice for swollen legs due to being overweight. At his living facility he cooks breakfast for everyone with a helper. About two years ago he cooked all 3 meals a day, but had to stop due to leg swelling and back and neck pain. The claimant testified he could lift 2 to 3 pounds, sit less than 30 minutes, stand 20 minutes and walk 1-1/2 mile. He testified he has problems focusing and can only concentrate for 20 minutes. He has to elevate his legs everyday for 1-1/2 hours. He is able to take care of his personal needs, shops, makes his bed and keeps his room clean, rides the bus, goes to AA meetings and church, cooks, and watches television.
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 17-18. The ALJ concluded that Plaintiff "does a wide range of activities of daily living as discussed above [and] none of the physicians who evaluated the claimant characterized the claimant as being totally disabled or incapacitated by reason of any impairment." AR 19.

Plaintiff asserts that a single paragraph on page 19 of the administrative record, or page seven of the ALJ's findings, is the "totality of the ALJ's credibility analysis." (Doc. 12 at 10.) The Court disagrees and finds that Plaintiff's statement misstates the record. As referenced above, the ALJ began her credibility analysis at page 17 of the administrative record (¶ 4) and

immediately after reciting the two-step process she must take for making a credibility determination.

More particularly, ALJ Madsen's credibility analysis begins with a summary of Plaintiff's testimony at the administrative hearing. AR 17-18. The ALJ then concludes that Plaintiff's impairments could be expected to cause the symptoms alleged, but finds the Plaintiff's statements concerning their severity are not entirely credible. AR 18. Next, the ALJ summarizes the medical record. AR 18-19. Thereafter, the ALJ concludes by stating Plaintiff's "impairments are not as limiting as he alleges. He does a wide range of activities of daily living as discussed above. Furthermore, none of the physicians who evaluated the claimant characterized the claimant as being totally disabled or incapacitated by reason of any impairment." AR 19.

ALJ Madsen offered clear and convincing reasons regarding Plaintiff's credibility: his wide range of the activities of daily living, and the fact that no physician who treated or examined Plaintiff characterized his impairments as incapacitating. Both are proper reasons.

An ALJ can look to daily living activities as part of the credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d at 603; *see also Thomas v. Barnhart*, 278 F.3d at 958-59. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d at 600. The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn v. Astrue*, 495 F.3d at 639.

ALJ Madsen considered the facts that Plaintiff cooks breakfast every day for the individuals who reside in the sober living facility with him, and he has done so for about two years. He can prepare simple meals for himself on other occasions. Plaintiff is also able to care for his personal needs, can shop when necessary, and keeps his room clean and makes his bed. Further, Plaintiff attends an AA meeting and church on a weekly basis. He also spends a portion of his day watching television. AR 18. This Court finds there is sufficient evidence to support

10

1  the ALJ's finding regarding Plaintiff's activities of daily living as Plaintiff's activities are varied
2  and consistent with an individual capable of work.  *Orn v. Astrue*, 495 F.3d at 639.
3       The ALJ also noted that "none of the physicians who evaluated [Plaintiff] characterized
4  [him] as being totally disabled or incapacitated by reason for any impairment."  AR 19.  A
5  careful review of the medical record establishes the accuracy of this statement.  It is reasonable
6  for the ALJ to consider the fact that no treating or examining physician has found the claimant
7  disabled.  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *see also Green v. Heckler*,
8  803 F.2d 528, 531 (9th Cir. 1986).  Therefore, ALJ Madsen's reason is a clear and convincing
9  one.
10      Notably, even if the ALJ erred by relying upon Plaintiff's activities of daily living in her
11 credibility analysis, reversal is not required here.  The ALJ also noted a lack of any physician
12 opinion that Plaintiff was disabled or incapacitated, and there is substantial evidence to support
13 the ALJ's conclusion that Plaintiff is capable of medium work.  *See Carmickle v. Commissioner
14 of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (*citing Batson v. Comm. of Soc. Sec.
15 Admin.*, 359 F. 3d 1190, 1197 (9th Cir. 2004) ("So long as there remains "substantial evidence
16 supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of
17 the ALJ's ultimate [credibility] conclusion" such is deemed harmless and does not warrant
18 reversal").
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Myron E. Brown.

IT IS SO ORDERED.

Dated:   October 26, 2012                                  /s/ Gary S. Austin
                                                      UNITED STATES MAGISTRATE JUDGE